**FILED**
DEC 23 2014
Clerk, U.S. District and Bankruptcy Courts

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

**LYLE A. SILVA**
1704 Pebble Beach Dr.
Bowie, Md 20721

        Plaintiff,

v.

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
2000 Pennsylvania Avenue N.W.
Washington DC 20006

        Defendant.

Case: 1:14-cv-02192
Assigned To : Jackson, Amy Berman
Assign. Date : 12/23/2014
Description: Pro Se Gen. Civil

JURY DEMAND

**JURY TRIAL DEMANDED**

## COMPLAINT
### (Employment Discrimination)

1.    Plaintiff, Lyle A. Silva, brings this civil action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 43 U.S.C. §§ 2000e – 16(c), alleging that he has been subjected to on-the-job discrimination and job termination based on his race (black), his color (brown) and his status as a minority.

### JURISDICITON

2.    This court has jurisdiction over the subject matter of this civil action pursuant to 42 U.S.C. 2000e-16(c). Plaintiff has fully exhausted his available administrative remedies by lodging a formal administrative complaint of employment discrimination with the United States Equal Employment Opportunity Commission, EEOC Charge No. 570-

**RECEIVED**
DEC 23 2014
Clerk, U.S. District and Bankruptcy Courts

1

2013-00490. Plaintiff filed a pro se complaint of discrimination with the EEOC. Pursuant to the EEOC Dismissal and Notice of Rights dated September 24, 2014, plaintiff files this complaint under this 90 day right-to-sue notice herein attached to this complaint.

## VENUE

3. Venue is proper in this judicial district as the conduct giving rise to the claims made herein occurred at the office of Cleary Gottlieb Steen & Hamilton located in the District of Columbia. Further, Plaintiff worked for Defendant in this jurisdiction and Defendant maintains an office in this jurisdiction.

## PARTIES

4. Plaintiff, Lyle A. Silva, (hereinafter "Mr. Silva" or "Plaintiff"), is an African – American citizen of the United States and the state of Maryland. Plaintiff is a contract attorney holding various permanent and temporary positions over the past twelve years. Plaintiff was employed by Cleary Gottlieb Steen & Hamilton (hereinafter "Defendant") from July 11, 2011 until his termination date of August 8, 2012 as a Project Attorney.

5. Defendant, Cleary Gottlieb Steen & Hamilton LLP is an international law firm with 16 offices located in major financial centers around the world. Defendant is organized and operates as a single, integrated global partnership (rather than a U.S. firm with a network of overseas offices). Defendant employs over 1200 attorneys and a staff of well over 2000 globally.

## FACTUAL BACKGROUND

6. On June 23, 2011 Plaintiff had his one and only face to face interview at Defendant's Washington DC office with Defendant employee Delante Stevens who according to Defendant's website operates under the title of "Staff Attorney". During this interview Delante Stevens informed Plaintiff that he must take a short written "privilege exam" consisting of 10 essay questions in order to assess Plaintiff's aptitude and ability to

perform the job. Delante Stevens informed Plaintiff that all potential candidates must take the test and the results would bear on whether Plaintiff was hired or not.

7. Prior to July 11, 2011 but after June 23, 2011 Delante Stevens instructed Plaintiff via email to submit a formal application for the position of Project Attorney. After doing so, Delante Stevens informed Plaintiff via email that he was indeed hired for the position and informed Plaintiff his start date would be July 11, 2011. Plaintiff reported for work on this day as instructed.

8. Plaintiff worked for several weeks for Defendant as a Project Attorney on a banking regulation matter. Plaintiff was supervised by Senior Staff Attorney Zoya Davis, an African American woman. At all times during performance of duties on this matter Plaintiff received nothing but outstanding praise for his work from supervisor Davis.

9. Sometime in the months following, however, prior to November 2011, the banking regulation matter concluded and Plaintiff was transferred to another matter involving a federal investigation into a West Virginia coal mine explosion. Plaintiff worked under the sole direction of Staff Attorney Michael W. Bohner, a Caucasian male.

10. Once again, during performance of his duties Plaintiff received nothing short of outstanding praise from supervisor Bohner and numerous associates from the New York City office of Defendant. Plaintiff's job responsibilities constantly increased over time as supervisor Bohner rewarded Defendant with increased work load and senior tasks as Plaintiff demonstrated his constant ability to far exceed the demands of the job. Supervisor Bohner verbally praised Plaintiff and gave him numerous written 'thank you's and other praise over course of time.

11. There were at least five other Project Attorneys employed by Defendant working on this matter, similarly situated to Plaintiff in job duties. Peter J. Creedon, a Caucasian male; Margaret Webster, a Caucasian female, Antoinette Perez Brosset, a Hispanic female and Brandon (last name unknown), a Caucasian male. At some time a fifth firm employed Project Attorney was assigned to the matter, a Caucasian female Reyn C. Anderson.

12. In December 2011 Plaintiff had a face to face meeting with firm employees Delante Stevens and Tom Hall. Plaintiff was told this meeting was to discuss a year-end performance evaluation and a discretionary monetary merit bonus. During this meeting plaintiff was informed by Mr. Stevens and Mr. Hall that his performance up-to date had been exceptional and that plaintiffs previous two supervisors Ms. Davis and Mr. Bohner spoke very highly of him. Accordingly, Mr. Stevens and Mr. Hall offered Plaintiff a discretionary bonus of $2500.00 USD based on his six month service with the firm.

13. Aside from the above mentioned meeting, verbal communications from Ms. Davis, verbal communications from Mr. Bohner, written communications from Mr. Bohner, and verbal communications from Mr. Stevens, plaintiff never received any formal performance evaluations during his entire tenure at the firm. Plaintiff never received any written performance evaluations. Plaintiff never had any other face to face performance evaluations. Plaintiff believes the Defendant in fact had no formal performance evaluations for Project Attorneys at this time, or to the very least none in which the results of such evaluation were communicated with the employee.

14. In early July 2012, as the Federal coal mine investigation winded down and the matter began to need less attention from Defendant's attorneys and employees, Defendant transferred three remaining Caucasian Project Attorneys, namely Peter J. Creedon, Margaret Webster, and Reyn C. Anderson to other matters at the firm to continue their employment. Plaintiff and Antoinette Perez-Brosset remained on the matter for several weeks as 'clean-up duty' to ensure the case concluded smoothly.

15. On July 27, 2012 Plaintiff was called into the office of firm employee Alex Billeb, who informed plaintiff that the firm had no matter in which to transition Plaintiff to, and therefore, Plaintiff would be put on administrative unpaid 'furlough' pending a new matter for placement. Plaintiff was informed by Ms. Billeb that the furlough can last up to several weeks, however, Ms. Billed discouraged Plaintiff from seeking other work during this time indicating that if Plaintiff accepted other work as an attorney, Plaintiff would have to go through the applications process and clear the conflicts process once again for Defendant

before resuming any work for Defendant. Plaintiff was instructed to check in weekly with a phone call to Ms. Billeb to inquire about a return to work.

16. On this same day, July 27, 2012 Project Attorney Antoinette Perez Brosset was also placed on unpaid administrative furlough. Ms. Perez was given the same set of details as Plaintiff regarding both the reason she was being placed on furlough as well as instructions on what to do while on furlough.

17. During the time period from July 28, 2012 through August 8, 2012 Plaintiff attempted several times to contact Ms. Billeb regarding his status. Plaintiff was successful once on August 1, 2012 at which time he was told there was no work for him to return to. Plaintiff left Ms. Billeb a subsequent voicemail in the days that followed that went unreturned. That is Plaintiff's last contact with Ms. Billeb.

18. In the afternoon on August 9, 2012, Plaintiff received a phone call from Delante Stevens and Tom Hall via conference call. Mr. Stevens and Mr. Hall indicated that due to lack of work, Plaintiff's position was being eliminated and Plaintiff was effectively terminated as an employee of Defendant immediately. Mr. Stevens and Mr. Hall indicated to Plaintiff on the call that performance was not an issue and they absolutely would welcome Plaintiff back to the firm if other opportunities came forth.

19. In the evening of August 9, 2012, Plaintiff returned home to find a "FedEx" package left on his door step from Defendant. Package contained a letter dated August 8, 2012 terminating Plaintiff's employment. Package also contained Plaintiff's accrued vacation time payout.

20. Upon investigation, Plaintiff learned that the exact same details regarding the end of his employment coincided with the termination of the employment by Defendant of Antoinette Perez Brosset. Ms. Perez Brosset was placed on furlough the same day. Ms. Perez Brosset was told there was no work for her in the interim and on August 9, 2012 Mrs. Perez Brosset too received a "FedEx" package to her door step containing a termination letter as well as her accrued leave pay. This all occurred prior to Ms. Perez

even having a conversation with anyone from Defendant firm indicating she had been terminated.

21. Upon investigation, Plaintiff learned that every Caucasian/non-minority similarly situated employer had retained their job and received other assignments while every minority/non-Caucasian employee had been furloughed and terminated in approximately 10 days.

21. Upon investigation, Plaintiff learned that other similarly situated Caucasian and non-minority Project Attorneys have been placed on furlough by Defendant after Plaintiff's furlough and brought back to work. Plaintiff learned that the only Project Attorneys terminated around this time period were non-Caucasian.

22. The discrimination complained of herein is the non-selection of continuing job opportunities by Defendant based on race and color of similarly situated black and Hispanic employees versus their Caucasian colleagues.

23. The discrimination complained of herein is based on the termination of employment by Defendant based on race and color of similarly situated black and Hispanic employees versus their Caucasian colleagues.

## COUNT I

### (Discrimination Based Upon Race and Color)

24. The non-selection of Plaintiff for another matter and/or continuing duties at the Defendant law firm, as set forth above, constitutes unlawful discrimination by the Defendant based on race and color and as such is a violation of Title VII of the Civil Rights Act of 1964, as amended.

25. The termination of Plaintiff as an employee of Defendant, as set forth above, constitutes unlawful discrimination by the Defendant based on race and color and as such, is a violation of Title VII of the Civil Rights Act of 1964, as amended.

26. As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer economic losses, lost pay and bonuses and other benefits, lost career opportunities and career damage, and both personal and professional humiliation as well as physical and emotional pain and suffering.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays that shit Court enter judgment in his favor and against defendant on the claims brought herein and provides him with the following relief:

(1)   Enter judgment in Plaintiff's favor and against Defendant on each of the claims contained in this civil action;

(2)   Award Plaintiff compensatory damages against Defendant to the maximum allowed under Title VII of the Civil Rights Act of 1964 (with interest);

(3)   Award Plaintiff actual damages against Defendant for lost pay, lost benefits, loss of career advancement opportunities and other damages the Court may deem as just and appropriate;

(4)   Award Plaintiff costs of bringing and maintaining this civil action and the administrative charges that preceded it, including reasonable attorneys' fees shall they be incurred, pursuant to 42 U.S.C. § 2000e-5(k);

(5)   Award such other and further relief as the Court may deem just and appropriate.

Respectfully submitted,

*[signature]*

Lyle A. Silva, pro se
1704 Pebble Beach Dr.
Bowie, MD 20721

| EEOC Form 161 (11/09) | U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION |
|---|---|

## DISMISSAL AND NOTICE OF RIGHTS

| To: Lyle A. Silva<br>1704 Pebble Beach Drive<br>Bowie, MD 20721 | From: St. Louis District Office<br>Robert A. Young Bldg<br>1222 Spruce St, Rm 8.100<br>Saint Louis, MO 63103 |
|---|---|

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 570-2013-00490 | Damian Rodriguez,<br>Investigator | (314) 539-7926 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*signature*
for James R. Neely, Jr.,
Director

SEP 2 4 2014
*(Date Mailed)*

Enclosures(s)

cc:
Human Resources Director
CLEARY GOTTLIEB STEEN & HAMILTON
2000 Pennsylvania Ave, NW
Washington, DC 20006

Paul C Skelly
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004