**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LYLE A. SILVA** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 1:14-cv-02192-ABJ** |
| | ) |
| **CLEARY GOTTLIEB STEEN** | ) |
| **& HAMILTON LLP,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) **February 16, 2016** |

**AMENDED COMPLAINT**
**(Race Discrimination)**

Pursuant to Federal Rule of Civil Procedure Rule 15(a)(1)(A), Plaintiff Lyle Silva, by his undersigned attorney, hereby files his Amended Complaint.

## JURISDICTION AND VENUE

1. This Court has jurisdiction of the subject matter of this complaint pursuant to 28 U.S.C. § 1331, because this is an action arising under the laws of the United States, specifically, Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e-5(f).

2. Plaintiff has exhausted the administrative remedies available to him under 42 U.S.C. §§ 2000e, *et seq.*, and all conditions precedent have occurred or been performed. The U.S. Equal Employment Opportunity Commission issued Plaintiff a Notice of Right to Sue on September 14, 2014. The original Complaint and Demand for Jury Trial was timely filed on December 23, 2014, within the ninety-day period afforded by 42 U.S.C. §§ 2000e-5(f)(1).

3. Venue in this District and in this Division is appropriate pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(c), as Defendant Cleary Gottlieb Steen & Hamilton (hereinafter "Defendant") has extensive and deliberate contacts in this District and Division, including a

business location at 2000 Pennsylvania Avenue, NW, #3, Washington, DC 20006, at which Plaintiff performed work during his tenure with Defendant.

## THE PARTIES

4. Plaintiff is a resident of Maryland and a former employee of Defendant.

5. Defendant is a is an international law firm with headquarters in New York, NY with offices located in major financial centers around the world. Defendant is a person within the meaning of 42 U.S.C. § 2000e(a), and an employer within the meaning of 42 U.S.C. § 2000e(b).

## III. FACTS CENTRAL TO PLAINTIFF'S CLAIMS

6. Since 2002, Plaintiff, an African American, has held multiple Contract Attorney or Project Attorney positions at various law firms in the D.C. Metro area, including serving as a Contract Attorney for Defendant during the summer of 2005.

7. Thus, Plaintiff is experienced in different types of document review and complex discovery assignments or projects.

8. On or about June 23, 2011 Plaintiff (African American), had an in-person interview for a Project Attorney position with Delante Stevens (African American), one of Defendant's Staff Attorneys.

9. During his interview, Plaintiff was informed by Ms. Stevens that he must take a short written "privilege exam" consisting of ten essay questions in order to assess his aptitude and ability to perform the Project Attorney position. Further, Mr. Stevens stated that all potential candidates must take the exam and the results would determine the decision to hire.

10. After June 23, 2011, Mr. Stevens instructed Plaintiff to submit a formal application for the position of Project Attorney.

11. Soon thereafter, Plaintiff learned from Mr. Stevens that he was hired by Defendant as

a Project Attorney.

12. July 11, 2011, was Plaintiff's official start date.

13. As a Project Attorney, Plaintiff's job duties, included but were not limited to, document review; privilege review; provide written summaries on specific items of discovery; deposition preparation.

14. Plaintiff worked for Defendant for several weeks on a banking regulation matter.

15. Plaintiff's direct supervisor was Zoya Davis (African American), a Senior Staff Attorney.

16. During the relevant time period of Ms. Davis' supervision of Plaintiff, he received nothing but praise for his work.

17. In the fall of 2011, the banking regulation matter concluded. Defendant transferred Plaintiff to another matter involving a federal investigation into a West Virginia coal mine explosion.

18. Plaintiff's new direct supervisor was Michael W. Bohner (Caucasian), a Staff Attorney.

19. Similar to his experience under Ms. Zoya, Plaintiff also received positive feedback about his work performance from Mr. Bohner as well as numerous Associates from Defendant's New York City office.

20. Under Mr. Bohnor, Plaintiff's job duties significantly expanded because he demonstrated the ability to exceed the demands of his duties. Mr. Bohnor rewarded Plaintiff an increased workload and more senior tasks.

21. At the same time Plaintiff worked for Defendant on the coal mine explosion, there

were at least five other Project Attorneys working on the same matter under Mr. Bohnor. Each Project Attorney had similar duties and responsibilities.

22. In addition to Plaintiff, the other Project Attorneys were Peter J. Creedon (Caucasian), Margaret Webster (Caucasian), Antoinette Perez Brosset (Latina), Brandon [Last Name Unknown] (Caucasian), and Reyn C. Anderson (Caucasian).

23. In or around December 2011, Plaintiff had an in-person meeting with Mr. Stevens and Tom Hall, Managing Attorney for Discovery and Litigation Technology.

24. During the meeting, Mr. Stevens and Mr. Hall discussed with Plaintiff his exceptional work performance and how much his direct supervisors thought highly of him. Thus, Plaintiff received a discretionary bonus of $2,500.

25. Plaintiff never received any formal performance evaluations while working for Defendant from Mr. Stevens or his direct supervisors.

26. In or around early July 2012, as the coal mine investigation slowed down, Defendant transferred the three remaining Caucasian Project Attorneys, Mr. Creeden, Ms. Webster, and Ms. Reyn onto other matters and continued their employment with Defendant.

27. Plaintiff and Ms. Perez-Brosset remained on the coal mine investigation project for several weeks to ensure the project concluded smoothly.

28. On July 27, 2012, Plaintiff met with Alex Billeb (Caucasian), a human resources employee for Defendant. Ms. Billeb informed Plaintiff that Defendant had no other projects to which to assign him. Therefore, Defendant placed Plaintiff on unpaid administrative furlough pending a new matter placement.

29. Ms. Billeb informed Plaintiff that the furlough can last up to several weeks. Yet, Ms. Billeb discouraged Plaintiff from seeking other employment during this time. Ms. Billeb

expressed that if Plaintiff found other work as an attorney, he would have to go through Defendant's application and conflicts check process once again before resuming any work for Defendant. Ms. Billeb instructed Plaintiff to check in weekly about return to work status.

30. Defendant also placed Ms. Perez Brosset on unpaid administrative furlough. Similar to Plaintiff, Ms. Billeb gave Ms. Perez Brosset the same explanation regarding the reason she was placed on administrative leave as well as instructions on checking in weekly about return to work status.

31. Between July 28, 2012, through August 8, 2012, Plaintiff attempted several times to contact Ms. Billeb regarding his return to work status.

32. August 1, 2012 was the only occasion where Plaintiff was successful in reaching Ms. Billeb, who told him that there were no updates on a return to work date at that time.

33. In the next couple of days, Plaintiff attempted to contact Ms. Billeb again to no avail.

34. On August 9, 2012, Mr. Stevens and Mr. Hall called Plaintiff and informed him that due to lack of work, Defendant was eliminating Plaintiff's position.

35. During the same phone conversation, Mr. Stevens and Mr. Hall indicated that Plaintiff's work performance was never at issue and that he would be welcome to work for Defendant in the future.

36. That same day, Plaintiff received a letter by mail confirming the termination.

37. A couple of days later, Plaintiff learned that Defendant also terminated Ms. Perez Brosset similar to how it terminated him.

38. Further, upon information and belief, Plaintiff learned from certain employees of Defendant that the Caucasian Project Attorneys that worked with him and Ms. Perez Brosset on

the coal mine investigation retained their positions with Defendant and worked on other projects, even after being furloughed.

39. However, Plaintiff, who according to his direct supervisors, did not have any work performance issues and who also received a bonus for excellent work performance, was terminated and not offered any placements.

40. Upon information and belief, given his ten years of experience, Plaintiff was as qualified (and maybe in some instances more experienced and qualified) to be placed on numerous types of assignments in comparison to the Caucasian Project Attorneys who worked with him under Mr. Bohnor prior to his termination.

41. In fact, upon information and belief, Plaintiff learned that other Caucasian Project Attorneys who had worked on different projects other than his and who remained furloughed long after Plaintiff's termination in August 2012, returned to work for Defendant on other assignments.

42. As a result, Defendant's reason for terminating Plaintiff for lack of work is contradictory given the retention of the Caucasian Project Attorneys that Plaintiff worked with prior to his termination as well as other Caucasian Project Attorneys doing similar work on other projects.

43. For a couple of months after his termination from Defendant, Plaintiff continued to inquire about returning to work after learning that Caucasian attorneys were getting placed on assignments.

44. However, Defendant never directly responded to Plaintiff's inquiries about returning to work.

45. Any reason Defendant gives for the different terms and conditions of employment and

discharge is pretext to discrimination against Plaintiff due to his race.

46. As a result of the Defendant's actions, Plaintiff has suffered loss of income, emotional distress, and pecuniary damages.

## IV. STATEMENT OF CLAIMS

### Count I: Race Discrimination (Title VII)

47. Plaintiff adopts and incorporates by reference ¶¶ 1-46 above.

48. Defendant unlawfully discriminated against Plaintiff on the basis of his race.

49. Title VII makes it unlawful for an employer to discriminate in employment on the basis of race.

50. Specifically, Defendant discriminated against Plaintiff by not reassigning him to different projects and terminating him while retaining his Caucasian counterparts.

51. Defendant's reason for terminating Plaintiff, lack of work, is inconsistent with its actions of retaining other Caucasian Project Attorneys to work on assignments before and after Plaintiff's termination

52. Upon information and belief, Plaintiff is as experienced and qualified (and maybe in some instances more experienced and qualified) in comparison to his Caucasian counterparts.

53. Additionally, while working for Defendant prior to his termination, Plaintiff was a productive worker and obtained a performance bonus.

54. As a result of Defendant's violations of Title VII, Plaintiff has suffered and is suffering injuries, including loss of past, present, and future earnings and considerable mental distress.

## V. REMEDIES SOUGHT

55. WHEREFORE, Plaintiff respectfully requests that the Court issue a judgment

granting her the following relief from Defendant:

a. A declaratory judgment that defendant discriminated against Plaintiff, as alleged herein;

b. Back pay, including without limitation other lost benefits due to Defendant's discrimination against Plaintiff;

c. Compensatory and punitive damages, pursuant to the ADA and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §§ 1981a(a)(2), 1981a(b)(3)(A), for taking these actions with malice and bad faith;

d. Prejudgment and post judgment interest on all damages, on the lost compensation and compensatory damages;

e. Reasonable attorneys' fees and costs under 42 U.S.C. §§ 1981a, 2000e-5(k); and

f. Such other and further relief as to the Court seems just and warranted.

## VI. JURY TRIAL DEMAND

56. Plaintiff requests a jury trial on all issues of fact and damages arising herein.

Respectfully submitted,

*Edgar Ndjatou*

________________________

EDGAR NDJATOU
Fed Bar No. 18107
McCree Ndjatou, PLLC
1828 L Street, NW, Suite 600
Washington, DC 20036
T: (202) 290-3724
F: (202) 370-7173
endjatou@mnlawyerspllc.com
Attorney for Plaintiff