UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| LYLE A. SILVA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 14-2192 (ABJ) |
| CLEARY GOTTLIEB STEEN & HAMILTON LLP, | ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

Plaintiff Lyle A. Silva is an African-American attorney who has worked at various law firms as a contract attorney. After he was furloughed and then fired by defendant Cleary Gottlieb Steen & Hamilton ("Cleary"), he filed this lawsuit, alleging that he was fired because of his race in violation of Title VII the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. *See* Am. Compl. [Dkt. # 16]. Defendant has moved for summary judgment. While plaintiff attributes his termination to his race, defendant maintains that plaintiff was terminated because the matter to which he was assigned had concluded, and the firm did not have other suitable work for him to do. Because plaintiff has not identified any evidence from which a reasonable juror could conclude that defendant's explanation is a pretext for discrimination, the Court will grant defendant's motion.

## BACKGROUND

The following facts are undisputed.[1] Cleary is an international law firm. Def.'s Statement of Material Facts [Dkt. # 24-18] ("Def.'s SOF") ¶ 1. Cleary's Discovery and Litigation Technology Department, based in Washington, D.C., handles the electronic discovery needs of the firm's clients in antitrust, litigation, and enforcement matters. *Id.* ¶ 2. The firm employs both contract attorneys and project attorneys. *Id.* ¶ 3. Contract attorneys are employed through a staffing agency and project attorneys are employed directly by the firm. *Id.* Both contract attorneys and project attorneys perform work on specific projects. *Id.* Project attorneys at Cleary are often furloughed for weeks at a time when their projects end or begin to slow down. *Id.* ¶ 4. Furloughed project attorneys may be recalled to work, but if the firm determines that it lacks sufficient suitable work to assign to a furloughed project attorney, it will terminate that individual's employment. *Id.*

Senior Staff Attorney Delante Stevens, who is African American, is the Cleary employee responsible for making employment decisions with regard to project attorneys. Def.'s SOF ¶ 5. He collaborates with the attorneys who are in charge of the Discovery Department's projects, and he works with Practice Administrator Alex Billeb, who is multiracial, and the Managing Attorney for Discovery and Litigation Technology, Tom Hall, who is white. *Id.*

Plaintiff, who is African American, graduated from law school in 1998. Def.'s SOF ¶ 6. Since 2000, he has held a series of contract and project attorney positions in the document review

---

1  Defendant filed a statement of undisputed material facts in support of its motion for summary judgment. Def.'s Statement of Material Facts [Dkt. # 24-18]. Plaintiff, who is represented by counsel, did not file "a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated." LCvR 7(h)(1). Since plaintiff did not file a response to defendant's statement of facts, "the Court may assume that facts identified by the moving party in its statement of material facts are admitted." *Id.*; *see also* Fed. R. Civ. P. 56(e)(2); Scheduling Order [Dkt. # 19] at 3–4.

field at approximately 20 or 30 law firms in the Washington, D.C. area. *Id.* Plaintiff applied for a project attorney position at Cleary in 2011. *Id.* ¶ 8. He had previously worked at Cleary for Tom Hall, and Hall recommended that Stevens interview plaintiff for an open position. *Id.* ¶ 9.

In the summer of 2011, the Department was working on a large bank matter that required attorneys with strong skills in determining whether particular documents could be withheld from production on privilege grounds. Def.'s SOF ¶ 10. Applicants at that time were given a diagnostic test to assess their skills in that area. *Id.* Plaintiff scored lower on the exercise than ten of the fifteen other applicants who took it in that time period; in light of his score, a senior staff attorney who scored the exam recommend that plaintiff not be offered a position. *Id.* ¶ 11. Stevens decided to hire plaintiff notwithstanding his diagnostic score because the firm had a high volume of work at that time, but he assigned plaintiff to a regulatory matter, instead of the privilege exercise in the bank matter. *Id.* ¶¶ 12, 14.

About a month later, work on the regulatory investigation slowed, and plaintiff was transferred to a project involving a coal mine investigation. Def.'s SOF ¶ 15. The mining project was managed by Staff Attorney Mike Bohner, who is white. *Id.* Bohner found plaintiff's work to be "acceptable," but not strong; he found it difficult to get plaintiff to focus on his work; and he also found errors in the work product that plaintiff ultimately completed. *Id.* ¶¶ 18–19. Bohner also had to caution plaintiff twice to not use social media during work hours. *Id.* ¶ 20.

Stevens avers in a declaration submitted in support of the summary judgment motion that he had concerns about plaintiff's focus and professionalism from the start. He lists a number of events that led him to doubt plaintiff's commitment to the job: plaintiff's request to delay his start date at the firm to attend a film festival, plaintiff's request to access the firm's guest wireless network so that he could use a personal device during work, and the fact that plaintiff was often

3

away from his desk for twenty to thirty minutes at a time talking with his coworkers. Def.'s SOF ¶ 22; Decl. of Delante Stevens, Ex. 5 to Def.'s Mot. [Dkt. # 24-6] ("Stevens Decl.") ¶ 21. In light of those concerns, Stevens concluded that plaintiff was an adequate employee who lacked potential for growth. Def.'s SOF ¶ 23. Stevens contemplated firing plaintiff in October 2011, when a white project attorney was also terminated for performance issues, but Bohner convinced him that plaintiff should stay given his knowledge about the mining matter. *Id.* ¶ 24.

In November 2011, plaintiff was given the same raise that was given to all recently-hired project attorneys. Def.'s SOF ¶ 26. And in December 2011, all project attorneys received a year-end bonus which was principally based on the number of hours that each project attorney worked. *Id.* ¶ 27. Because of the concerns about plaintiff's work performance, his bonus was reduced. *Id.*

In the spring of 2012, the mining project, as well as other projects, began to wind down. Def.'s SOF ¶ 28. So Stevens, Billeb, and Hall began discussing the reallocation of project and contract attorneys. *Id.* At the time, the firm "had many strong project attorneys and contract attorneys," and the decision on which attorneys would be furloughed was "difficult." Stevens Decl. ¶ 31.

There were six project attorneys on the mining project: B.S., R.A., P.C., A.B., M.W, and plaintiff. Def.'s SOF ¶ 29. In a series of emails from Bohner to Billeb and Stevens in April 2012, Bohner provided feedback on a number of project attorneys. In those emails, Bohner described P.C. as "very good" and M.W. as "excellent," and he recommended that they be "placed first if other projects need assistance." *Id.* ¶ 30; SILVA0884, Ex. 12 to Def.'s Mot. [Dkt. # 24-13]; SILVA0896, Ex. 12 to Def.'s Mot. [Dkt. # 24-13]. Stevens also wrote emails to himself to memorialize his assessment of various project attorneys. In a September 2011 email to himself, Stevens described P.C., a white male, as a "solid" project attorney, and he noted that it would be

easy to build a team of contract attorneys around him. Def.'s SOF ¶ 31; SILVA0850, Ex. 9 to Def.'s Mot. [Dkt. # 24-10]. M.W., a white female, ran the privilege review team on the mining project; Stevens described her in the same September 2011 email as a "promising" project attorney. *Id.* ¶ 32; SILVA0850. R.A., a white female, was a former Cleary associate who had returned to the firm to work part-time; she worked as an associate doing securities work, and also assisted with document review. Def.'s SOF ¶ 34. In a June 2012 email from Bohner to Billeb and Stevens, Bohner described R.A.'s work as "very good." *Id.* ¶ 35; SILVA0903, Ex. 12 to Def.'s Mot. [Dkt. # 24-13]. Those three attorneys were reassigned to other matters. *Id.* ¶¶ 33, 35.

B.S., a white male, resigned in June 2012, but Stevens had planned to furlough him. Stevens Decl. ¶¶ 20, 39. A.B., a Hispanic female, was furloughed and then terminated. *Id.* ¶ 43.

Bohner, the attorney who supervised plaintiff on the mining project, told Billeb and Stevens in an April 2012 email that plaintiff "has proven capable of targeted searches in response to associate research requests," SILVA0883, but he later testified at his deposition that those kinds of assignments only constituted a "very small percentage" of the Discovery Department's work. Dep. of Michael W. Bohner (Oct. 12, 2016) [Dkt. # 24-12] ("Bohner Dep.") at 22:11–16. Bohner also testified about a specific incident: he gave plaintiff a privilege assignment, but the final work product contained many errors, so Bohner was required to work late at night to correct the issues. *Id.* at 23:3–9; Def.'s SOF ¶ 19. After that experience, Bohner was reluctant to assign plaintiff additional privilege work. Bohner Dep. at 39:11–15; Def.'s SOF ¶ 19.

Ultimately, on July 27, 2012, plaintiff was furloughed. Def.'s SOF ¶ 37. Stevens states in his declaration that he made the decision to furlough plaintiff based on "the feedback . . . from Mr. Bohner" about plaintiff's contributions to the mining project; his "own observations" about Silva's "commitment to the work of the Department;" and in light of "the staffing needs of other projects

5

being handled by the Department at the time." Stevens Decl. ¶ 40. Stevens had been prepared to bring plaintiff back to work if the mining project resumed, but he concluded that the department had no other suitable work for plaintiff. Def.'s SOF ¶ 38. When it became clear that the mining project would not generate work in the immediate future, plaintiff was terminated, effective August 9, 2012. *Id.* ¶ 39.

Plaintiff, proceeding *pro se*, filed this federal lawsuit on December 23, 2014, alleging discrimination on the basis of his race and color. Compl. [Dkt. # 1] ¶¶ 24–25. On April 8, 2015, defendant moved to dismiss. Def.'s Mot. to Dismiss [Dkt. # 3]. On February 17, 2016, plaintiff, represented by counsel, moved for leave to amend the complaint. Pl.'s Mot. to Am. Compl. [Dkt. # 14]. On March 29, 2016, the Court granted plaintiff's motion and denied defendant's motion to dismiss. Min. Entry (Mar. 29, 2016); *see* Am. Compl. [Dkt. # 16]. The amended complaint alleges that defendant engaged in discrimination based on race when it terminated plaintiff; it omits the claim based on color. Am. Compl. ¶¶ 48–54.

After a period of discovery, defendant moved for summary judgment, and that motion is fully briefed and ripe for resolution. Def.'s Mot. for Summ. J. [Dkt. # 24] ("Def.'s Mot."); Mem. of P. & A. in Supp. of Def.'s Mot. [Dkt. # 24-1] ("Def.'s Mem."); Mem. in Supp. of Pl.'s Opp. to Def.'s Mot. [Dkt. # 26] ("Pl.'s Opp."); Reply in Supp. of Def.'s Mot. [Dkt. # 27] ("Def.'s Reply").

**STANDARD OF REVIEW**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

**THE LEGAL FRAMEWORK FOR ANALYZING A DISCRIMINATION CLAIM**

Title VII of the Civil Rights Act of 1964 was enacted to implement "the federal policy of prohibiting wrongful discrimination in the Nation's workplaces." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2522 (2013). The anti-discrimination provision "makes it unlawful for an employer 'to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race'" or other protected characteristics. *Steele v. Schafer*, 535 F.3d 689, 695 (D.C. Cir. 2008), quoting 42 U.S.C. § 2000e-2(a); 42 U.S.C. § 2000e-2(a). As the D.C. Circuit has explained, to state a prima facie case of disparate treatment under Title VII's antidiscrimination provision, the plaintiff must establish two essential elements: "that (i) the plaintiff suffered an adverse employment action (ii) because of the

plaintiff's race, color, religion, sex, national origin, age, or disability." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008), citing 42 U.S.C. § 2000e-16(a).

When a plaintiff brings a disparate treatment claim under the anti-discrimination provision of Title VII and relies on circumstantial evidence to establish the employer's unlawful conduct, the Court applies the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Barnette v. Chertoff*, 453 F.3d 513, 515 (D.C. Cir. 2006). Under that framework, the plaintiff bears the initial burden of establishing a prima facie case. *McDonnell Douglas*, 411 U.S. at 802; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). Once a prima facie case is established, then "[t]he burden . . . must shift to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse action. *McDonnell Douglas*, 411 U.S. at 804; *Holcomb*, 433 F.3d at 896. If a legitimate, nondiscriminatory reason is given, the burden shifts back to the plaintiff to prove that the proffered reason is a pretext for discrimination or retaliation. *McDonnell Douglas*, 411 U.S. at 804; *Holcomb*, 433 F.3d at 896.

In cases where the defendant proffers legitimate, nondiscriminatory reasons for the challenged actions, the court need not conduct the threshold inquiry into whether the plaintiff established a prima facie case of discrimination. Instead, the court is required to analyze whether the defendant's asserted reason is in fact a legitimate, nondiscriminatory explanation. *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493–94 (D.C. Cir. 2008) ("Lest there be any lingering uncertainty, we state the rule clearly: In a Title VII disparate-treatment suit where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not – *and should not* – decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*.").

Once the defendant has proffered a legitimate explanation, the burden shifts to the plaintiff to demonstrate why the defendant is not entitled to judgment as a matter of law. In the context of a disparate treatment claim, the plaintiff may defeat summary judgment by proving either that the defendant's legitimate, nondiscriminatory reason is a pretext for discrimination, *McDonnell Douglas*, 411 U.S. at 804, or that the employment action was motivated by discrimination in addition to the proffered legitimate reason. *Nassar*, 133 S. Ct. at 2522–23; *Fogg v. Gonzales*, 492 F.3d 447, 451 (D.C. Cir. 2007); *see also Ginger v. District of Columbia*, 527 F.3d 1340, 1345 (D.C. Cir. 2008) (explaining the difference between a "single motive" and a "mixed-motive" disparate treatment case). Plaintiff at all times bears the burden of persuasion. *Morgan v. Fed. Home Loan Mort. Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003), quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000).

A plaintiff alleging that his employer acted for an unlawful discriminatory reason may avoid summary judgment by identifying evidence from which a reasonable jury could find that the employer's proffered, lawful reasons for acting were pretextual, or, in other words, "unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). "Showing pretext, however, requires more than simply criticizing the employer's decisionmaking process." *Hairston v. Vance-Cooks*, 773 F.3d 266, 272 (D.C. Cir. 2014). It is not sufficient to "show that a reason given for a job action [was] not just, or fair, or sensible," *Fischbach v. D.C. Dep't of Corrs.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996), quoting *Pignato v. Am. Trans. Air, Inc.*, 14 F.3d 342, 349 (7th Cir. 1994), nor is it sufficient to challenge "the 'correctness or desirability' of [the] reasons offered." *Id.*, quoting *McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d 368, 373 (7th Cir. 1992). The plaintiff must identify evidence from which a reasonable jury could find that the employer's stated reasons were "phony." *Id.*, quoting *Pignato*, 14 F.3d at 349. And "an employer's action may be

justified by a reasonable belief in the validity of the reason given even though that reason may turn out to be false." *George v. Leavitt*, 407 F.3d 405, 415 (D.C. Cir. 2005). "If the employer's stated belief about the underlying facts is reasonable in light of the evidence, . . . there ordinarily is no basis for permitting a jury to conclude that the employer is lying about the underlying facts." *Brady*, 520 F.3d at 495.

In evaluating the employer's stated reason, the Court must assess whether the stated reason is both "honest" and "reasonable." *DeJesus v. WP Co.*, 841 F.3d 527, 534 (D.C. Cir. 2016).

> To be clear, courts should not evaluate the reasonableness of the employer's business decisions, such as whether it made financial sense to terminate an employee who generated substantial revenue . . . . Rather, the factfinder is tasked with evaluating the reasonableness of the decisionmaker's *belief* because honesty and reasonableness are linked: a belief may be so unreasonable that a factfinder could suspect it was not honestly held.

*Id.* (emphasis in original).

## ANALYSIS

In this case, defendant has offered a legitimate and non-discriminatory reason for its decision to furlough and then terminate plaintiff: "[h]e was hired to do project work; his principal project wound down; and he was furloughed and terminated . . . because the Firm made a business judgment that there was no other suitable work for him." Def.'s Mem. at 16–17. Delante Stevens, the Cleary employee ultimately responsible for making the decision, averred that the decision to furlough plaintiff was:

> based on a) the feedback I received from Mr. Bohner . . . b) my own observations, which led me to doubt Mr. Silva's commitment to the work of the Department . . . and c) consultation with Ms. Billeb and Mr. Hall about the staffing needs of other projects being handled by the Department at the time. I also consulted directly with the other senior staff attorneys about ongoing projects, and they all confirmed that they did not have a need for Mr. Silva's services.

10

Stevens Decl. ¶ 40. This was corroborated by the Managing Attorney for Discovery and Litigation Technology, Tom Hall, who testified at his deposition:

> I mean, the reason was that the work that we were doing on that case was winding down. And, you know, we are looking where to place resources as work winds down. . . . [W]e just didn't see . . . that we would have appropriate work for Mr. Silva on another case in the immediate future.

Dep. of Thomas L. Hall (Oct. 12, 2016), Ex. 7 to Def.'s Mem. [Dkt. # 24-8] ("Hall Dep.") at 34:17–35:4. And as Cleary explained in its termination letter to plaintiff:

> Per your offer letter, your temporary employment at Cleary Gottlieb Steen & Hamilton LLP ("the Firm") as a project attorney was on an as-needed basis for one or more particular projects. Since we no longer have a project for you to work on, effective August 9, 2012, your temporary employment with the Firm will terminate.

Ex. 15 to Def.'s Mot. [Dkt. # 24-16].

Given that evidence, the burden shifts back to the plaintiff to "show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason." *Holcomb*, 433 F.3d at 896–97, quoting *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003); *see also Porter v. Shah*, 606 F.3d 809, 815 (D.C. Cir. 2010). "All of the evidence" includes

> any combination of (1) evidence establishing the plaintiff's prima facie case; (2) evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff, such as independent evidence of discriminatory statements or attitudes on the part of the employer.

*Holcomb*, 433 F.3d at 897.

Plaintiff asserts that the firm's proffered explanation is unworthy of credence for two reasons. First, he implies that he was "significantly better qualified to be placed on another project." Pl.'s Opp. at 6. Second, he argues that the employer's explanation has shifted over time. *Id.* at 8. But the evidence that plaintiff proffers is not sufficient to enable a reasonable juror to

11

draw the inference that defendant's explanation was not honest and reasonable or that plaintiff's termination was motivated by racial bias.

I.  **Plaintiff has not identified a "stark superiority of credentials," nor has he shown that the firm misstated his credentials.**

Plaintiff has adduced no direct evidence of discrimination; he attempts to establish pretext by arguing that he was significantly more qualified than the employees who received new projects. Pl.'s Opp. at 6–8. The D.C. Circuit has stated:

> If a factfinder can conclude that a reasonable employer would have found the plaintiff to be significantly better qualified for the job, but this employer did not, the factfinder can legitimately infer that the employer consciously selected a less-qualified candidate – something that employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture.

*Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C. Cir. 1998).

For an inference of pretext to arise from a qualifications gap, the plaintiff must possess such a "stark superiority of credentials," *Porter*, 606 F.3d at 816, quoting *Stewart v. Ashcroft*, 352 F.3d 422, 429 (D.C. Cir. 2003), that the qualifications gap is "great enough to be inherently indicative of discrimination." *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1227 (D.C. Cir. 2008), quoting *Jackson v. Gonzales*, 496 F.3d 703, 707 (D.C. Cir. 2007); *see also Lathram*, 336 F.3d at 1091 (finding the qualifications gap significant because "there was a wide and inexplicable gulf between the qualifications" of two candidates for promotion).

A plaintiff can also prove pretext by "seek[ing] to expose other flaws in the employer's explanation," such as by "showing [that] the employer has misstated [his] qualifications." *Holcomb*, 433 F.3d at 897, citing *Aka*, 156 F.3d at 1295. When assessing whether the plaintiff has met his burden to show pretext, however, "the court must respect the employer's unfettered discretion to choose among qualified candidates," *Fischbach*, 86 F.3d at 1183, because to do otherwise "would be to render the judiciary a super-personnel department that reexamines an

entity's business decisions – a role [courts] have repeatedly disclaimed." *Adeyemi*, 525 F.3d at 1227, quoting *Jackson*, 496 F.3d at 707; *see also DeJesus*, 841 F.3d at 534.

The plaintiff in this case attempts to prove pretext both by claiming that his credentials were superior to those of the other project attorneys, and by arguing that Cleary misstated his credentials when it decided to terminate his employment.

In support of his argument that his qualifications were starkly superior to those of the attorneys who were retained, plaintiff points to three relevant comparators: P.C., R.A., and M.W. Pl.'s Opp. at 7–8. P.C., a white male, joined the firm in 2010, had worked on approximately eight other projects at the firm, and had at least ten years of prior document review experience. Def.'s SOF ¶ 31. In an email to himself dated September 7, 2011, Stevens described P.C.'s work as "solid." SILVA0850.

R.A., a white female, was a former associate at the firm who returned to work part-time after resigning to care for her children. Def.'s SOF ¶ 34. In addition to her work on document review projects, R.A. also performed securities work for another practice group – the same group with which she had previously worked as an associate. *Id.* Bohner described R.A.'s work in a June 2012 email to Billeb and Stevens as "very good," and noted that she would "be an asset to any matter." SILVA0903.

M.W., a white female, ran the privilege review team on the mining project. Def.'s SOF ¶ 32. She had worked for more than seven years at another firm before joining Cleary in 2011. *Id.* In a September 7, 2011 email to himself, Stevens described M.W.'s work as "promising," and concluded that she showed "special ability." SILVA0850.

Faced with this evidence, plaintiff failed to provide evidence to support a finding that his qualifications were significantly greater than those of the other attorneys, if they were greater at

13

all. He conceded at his deposition that he "never said [he] was more qualified [than R.A.]." Dep. of Lyle A. Silva, Ex. 4 to Def.'s Mot. [Dkt. # 24-5] ("Silva Dep.") at 69:9–11.[2] He posited that he was "just as, if not more qualified than M.W." *Id.* at 69:15–18. And in response to a question about whether he believed he was more qualified than P.C., plaintiff responded that he views himself as "just as" qualified. *Id.* at 71:6–15.

And plaintiff has not pointed to any other evidence that would show that his credentials were starkly superior to the credentials of the comparators. Plaintiff suggests that defendant bears the burden of proof on this issue, *see* Pl.'s Opp. at 7 (arguing that the qualifications-based evidence should be rejected because "[d]efendant [has not] demonstrated that [p]laintiff's comparators have similar or superior qualifications to [d]efendant or that they are not the appropriate comparators"), but it is plaintiff's burden to rebut the employer's legitimate and nondiscriminatory explanation with evidence of pretext by showing that *his* qualifications are superior – not the other way around. *See Aka*, 156 F.3d at 1295.

Plaintiff's claim of superiority also falters in light of other undisputed facts in this case. Stevens viewed plaintiff as an "adequate but unexceptional performer," and he had concerns about plaintiff's "focus and dedication" based on his observations that plaintiff "was often away from his desk . . . spending 20-30 minutes at a time walking around and talking with coworkers," and because plaintiff was seen using social media during work hours. Def.'s SOF ¶¶ 20–23. And Bohner explained that he was reluctant to give plaintiff privilege-related work after an assignment that plaintiff completed "contained many errors," causing Bohner to "work late at night." *Id.* ¶ 19.

---

2   R.A. also appears to be in inappropriate comparator to plaintiff. Unlike plaintiff, who served as a project attorney, R.A. served not only as a project attorney, but also as an associate in the securities group. Def.'s SOF ¶ 34; *see also* Stevens Decl. ¶ 37 (describing R.A.'s position as "unique").

Moreover, plaintiff has offered no evidence to show that Cleary did not honestly and reasonably assess the relative strengths and weakness of its staff. *See DeJesus*, 841 F.3d at 534. Plaintiff does not dispute that he made errors in the workplace, that he lacked focus, or that he spent time on social media during working hours. *See* Def.'s SOF ¶¶ 18–22.

Plaintiff also contends that the firm misstated his credentials because it failed to take into account his "15 years of litigation experience" before he was terminated. Pl.'s Opp. at 7. Pointing to his experience on a variety of complex matters, he submits that he could "be value added on many types of matters." *Id.* But there is no evidence that defendant overlooked or misrepresented that fact. Plaintiff is plainly disappointed with the outcome here, but proving pretext "requires more than simply criticizing the employer's decisionmaking process." *Hairston*, 773 F.3d at 272. The Court does not doubt that plaintiff is experienced and qualified to work on certain projects when they are available, and nothing in this opinion should be read to suggest otherwise. But the other attorneys were experienced as well, and the D.C. Circuit has repeatedly cautioned that the Court is not authorized to act as a "super-personnel department." *DeJesus*, 841 F.3d at 534; quoting *Adeyemi*, 525 F.3d at 1227. It is undisputed that the firm was faced with a reduced workload for project attorneys, and plaintiff has pointed to nothing that would give rise to an inference that its ranking of those attorneys was tainted by racial animus.

Because plaintiff has introduced no evidence to raise any inference of discriminatory animus in Cleary's decision to furlough and terminate him, his argument that the firm failed to take his experience into account fails to establish pretext.

## II. Plaintiff has failed to come forward with any evidence of a shifting explanation for his termination.

Plaintiff also attempts to prove pretext by pointing to what he interprets as Cleary's shifting explanation for his termination. Pl.'s Opp. at 8. He states that when he was terminated, Cleary

15

told him that his work performance was not the reason for his termination, and he complains that the firm is asserting now that work performance did play a role in the decision. *Id.*[3]

It is true that, in the termination letter dated August 8, 2012, the firm explained that plaintiff was terminated because the firm "no longer ha[d] a project for [him] to work on." Ex. 15 to Def.'s Mot. The firm maintains that plaintiff was "not terminated for unsatisfactory performance," and it argues that "it has never claimed otherwise." Def.'s Reply at 4. He was terminated because of a slowdown in work to be allocated, and because the firm had to make "difficult decisions . . . about how best to staff remaining matters." Stevens Decl. ¶ 31. The evidence about plaintiff's work performance was introduced to rebut plaintiff's claim that he was more qualified than the other project attorneys, and providing that evidence in support of its motion for summary judgment does not constitute evidence of pretext. *See Hairston*, 773 F.3d at 273 ("Providing more detailed information once litigation begins does not create a genuine issue of material fact.").

---

3   Plaintiff did not cite any record evidence to support this argument, and so he does not supply the proof needed at the summary judgment stage to create a genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324 (to defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial"); *Bank of N.Y. Mellon Tr. Co., N.A. v. Henderson*, 107 F. Supp. 3d 41, 45 (D.D.C. 2015) (the Court need not rely on "factual assertions that are not supported with citations to the record," and it "does not scour the record for evidence that will support a party's claims").

16

## CONCLUSION

Because plaintiff has not come forward with any evidence to support his allegation that defendant's stated reason for terminating his employment as a temporary attorney was pretext for race discrimination, defendant's motion for summary judgment will be granted. A separate order will issue.

/s/ Amy B Jackson
AMY BERMAN JACKSON
United States District Judge

DATE: May 25, 2017